[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION AS TO CUSTODY OF MINOR CHILDREN
STATEMENT OF THE CASE
When the marriage of the parties was dissolved on December 6, 1995, the court entered a temporary custody order as to the three minor children issue of the marriage.
An examination of that decision reflects that court's concern for the children in view of the bitterness between the parties and their failure to insulate the children from their personal feuding.
In awarding custody to the defendant father, the court commented extensively on what it perceived to be serious examples CT Page 6911 of inappropriate behavior by both parents. That trial consumed eight trial days, the present hearing, confined to the custody issue, took almost five days and testimony was heard from seventeen witnesses. The defendant proceeded pro se, the plaintiff and the children were represented by counsel.
DISCUSSION
With the court's primary obligation to consider the best interests of three children, the court has carefully reread the memorandum of decision of the trial court in the dissolution. This excerpt from page 15 of that decision is significant in light of the evidence presented to this court. Referring to the plaintiff, the court said: "The court would hope she would display a maturity that would put her into a vocation that is less ethereal than aerobics instruction and would give her a better opportunity to support herself and develop a lifestyle that could result in her winning back custodial rights in her children."
With respect to the defendant, the court commented on his job changes and his newly assumed custodial role, observing that: "It will be interesting to see how the defendant handles this matter once it arises." (page 8).
Obviously the court anticipated that at a subsequent hearing on final custody, an examination of the progress and actions of the parties since the entry of the temporary order would be made.
Turning to the post order actions of the parties, this court is appalled at their display of cruelty, negligence and disrespect.
The plaintiff's behavior, particularly with respect to the condition in which she left the family residence in 1996, is hardly exemplary. However, having learned of the details of the "scorched earth" policy the defendant conducted in the court process, both before and after judgement, her disdain for the defendant is at least understandable. What is best described as a judicial ordeal also explains the plaintiff's mental state and inability to keep house, work, and care for their young children at a level found in "Good Housekeeping" or "Family Circle" magazines.
The behavior of the defendant suggests a person so self CT Page 6912 absorbed that there is no possible consideration on his part for the views or feelings of others. He has shown no respect for the court orders save those that favor him.
Thus, he has disobeyed orders treating with alimony, support and a court ordered sale of the family residence. This latter move seems to have dissipated the equity of both parties while the defendant lived rent free, displaying to the outside world the role of the oppressed father who was victimized by his uncaring ex-wife.
His frivolous appeal and 37 contempt motions, most with dubious basis in fact or law, round out a deplorable record of abuse of the legal processes.
However, the court would be prepared to put all of this aside if this parent displayed some degree of sensitivity to the real needs of these children. Filling their every breathing minute with scheduled activities may have a place in their lives, though the average day of these children would require the stamina of marathon runner. It is the atmosphere in which he has enveloped these children that causes concern to the court.
He has shown no appreciation of the fact that children of divorced parents should not be immersed in the parental dispute and certainly should not be made to participate, especially by a custodial parent after judgement. Here the children have been led to believe the family home is in foreclosure because of their mother. He has had them write her a letter to request she adhere to the defendant's request as to the house (despite the court order referred to above). And finally, the court has heard a tape recording of a phone conversation in which this defendant has his now eleven year old son (who suffers from autism) call the plaintiff to berate her for some misuse of a computer disc. The defendant is clearly heard in the background berating this child with what he is to say to his mother. A further elaboration of this type of activity would serve no purpose.
Also disturbing to the court is the observation that though the defendant has presented as witnesses in his behalf some very intelligent and capable people, these people cannot influence him to put aside his campaign to eliminate the mother from the scene and even his version of the score with her. The court was impressed with the defendant's fiancee and his sister. Yet, they, and apparently the paternal .grandparents. are only bystanders as CT Page 6913 this defendant runs on at his own pace.
The court has also had the opportunity to observe these parties as they testified extensively and were cross examined. The defendant is obviously under extreme pressure to portray himself as an ideal parent. The intensity and extent of this pressure borders on the obsessive and does not bode well for the future of any of the participants in this scenario. On at least two occasions the defendant veered "out of control" on the stand, displaying exactly what the court is concerned about for the future. The plaintiff's demeanor, though occasionally anxious, suggests she has a much more balanced view of the problems presented here. She is also more aware of what the children endure in the course of their long, drawn out proceedings. In the past, when counseling was suggested as a desirable aid for the all, but especially the children, the defendant objected due to concerns for the cost. He apparently has had a change of heart on this issue, but all of the experts who testified acknowledged that the children were in need of this help because of the pending dissolution and the way it was proceeding.
The court must address the observations of a school psychologist, called by the attorney for the child. This witness noted that the children had made progress in school and that their lives were more stable since their father had taken custody of them. The court found that testimony to be significant, almost compelling. However, after hearing the testimony of a child psychologist who treated the plaintiff and the children, the court feels obliged to reconsider the impact of that testimony. Of particular significance is the fact that the children were in the plaintiff's care during the period when the domestic situation was at its worst. As noted above, these conditions obviously overwhelmed the plaintiff. Yet, and this is ironic, the defendant appears to have been a major contributor to the chaos from which he now seeks to profit. Things are relatively calm now — but one must ponder the question of whether the children would have undergone the process of stability had the plaintiff had custody — just so long as the warfare had abated.
CONCLUSION
The court concludes that reluctant as it is to cause still another change in their lives, the long term considerations of the best interests of these children dictate that custody of the three minor children, Anthony. Candace, and Christian be awarded CT Page 6914 to the plaintiff mother. It is regrettable that they must leave their familiar residence, but the prior court order of sale is final and this court can conceive of no way to avoid the foreclosure the defendant has occasioned.
The defendant is awarded reasonable visitation and the following orders shall pertain to the custody and visitation:
1. Custody and visitation shall be premised on the principal that neither party will speak disparagingly of the other or of the other's associates in the presence of the children nor use them to orally convey complaints or grievances. The children shall not be an instrumentality of either party's attempts to undermine the other's relationships with the children, it being the intent of this court to consider sanctions against a party who fails to insulate the children from the personal differences of the party. This sanction could include a modification or termination of custody or visitation.
2. The defendant's visitation schedule shall be:
a. Commencing July 11, 1998 and then every other weekend from Friday after school until Sunday evening at 6:30 p. m. In the event of a Monday school vacation holiday falling on the father's weekend, then the father's visitation shall be extended to 6:30 p. m. on that Monday.
b. Two nights per week from after school until 7:00 p. m., provided, however, the father shall allow the children to engage in any school activities that are recommended by school counsellors and/or other social activities which the children are already involved in.
c. Two weeks during the summer, including 1997, and on which the parties should agree at least three weeks in advance.
d. The parties shall alternate the holidays of Christmas Eve, Christmas Day, Easter and Thanksgiving, i.e., the parent with Easter will not have Thanksgiving and vice versa.
e. The parties shall alternate the school vacations of the minor children. The mother shall have the Christmas school vacation in 1997 and in all odd years thereafter. The father shall have the Christmas school vacation in 1998 and in all even years thereafter. The father shall have the spring vacation in CT Page 6915 1999 and all odd years thereafter.
3. Both parties shall provide reasonable telephone access for the minor children to each parent. The access shall be in the evenings between the hours of 5:00 p. m. and 7:00 p. m. Telephone access shall be permitted as long as the calls are made on a cordial
4. Both parents shall have equal access to all medical records of the minor children. Both parents shall sign any and all necessary authorizations so that each party shall have equal access to any and all medical, psychological, psychiatric, therapy and dental records of the minor children. Both parents shall instruct the medical providers to speak to the other parent upon reasonable request.
5. Both parents shall communicate to make travel arrangements for the minor children concerning visitation and changes to the visitation schedule. The parties shall give each other as much advance notice as reasonably possible in order to schedule changes or make-ups to visitation.
6. In the event that either parent wishes to take the children out of state, he or she shall give the other parent reasonable advance notice including time, place and destination of the trip and a telephone number at which the travelling parent can be reached.
7. Neither parent shall change the residence of the minor children out of the State of Connecticut without a written agreement between the parties or otherwise by order of the court. In the event that either parent wishes to change the residence of the children; outside of the State of Connecticut, the removing parent shall give the other parent ninety (90) days advance notice of same.
8. Each parent will have the authority to give the children necessary medical treatment when the children are with that parent. Except in the case of emergencies, neither parent shall make any unilateral medical decisions concerning the minor children without first consulting the other parent and inviting that other parent's participation with the medical provider. For example, if any medical provider recommends surgical treatment, then both parents shall have the right to speak with the physician and discuss the need for said surgical procedure and CT Page 6916 have an opportunity to have a second opinion, provided there is sufficient time medically to do so. Neither parent is to be excluded from the process of making medical decisions for the minor children in the case of nonemergency surgical or medical situations. Nothing herein shall limit either parent's right in an emergency situation to make necessary authorizations to the medical provider.
9. Since both parties have indicated on the record a willingness to engage in counselling, the court will not order a specific regimen. However, it is recommended that a conference be scheduled forthwith at which time the counsellor, etc. shall be discussed. If the parties cannot agree on a procedure, the court will intervene on motion of either party to set the process in motion.
10. Under the present conditions in which the family residence is scheduled for foreclosure, the court is reluctant to award exclusive possession to either parent, as it is uncertain as to what would be best for the children. On the assumption that these parties know that best, the Court will defer action unless one of the parties requests court intervention. That issue may also have a bearing on subsequent support orders.
Anthony V. DeMayo Judge Trial Referee